IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS DIVISION

| | |
|---|---|
| ALBERIC PIERRILUS; PAUL PIERRILUS; <br><br> Plaintiffs, <br><br> -against- <br><br> KRISTI NOEM, *in her official capacity as Secretary of the Department of Homeland Security*; <br><br> UR M. JADDOU, *in her official capacity as Director of the U.S. Citizenship and Immigration Services*; <br><br> MARCO RUBIO, *in his official capacity as Secretary of the Department of State*; <br><br> Defendants. | Case No. |

**COMPLAINT FOR WRIT OF MANDAMUS AND COMPLAINT UNDER THE ADMINISTRATIVE PROCEDURE ACT AND THE DUE PROCESS CLAUSE TO COMPEL DEFENDANTS TO REINSTATE PLAINTIFFS' RELATIVE PETITION AND IMMIGRANT VISA**

1. This action is brought by Plaintiff Alberic Pierrilus ("Alberic P.") and his son, Paul Pierrilus ("Paul P."), against Defendants, Kristi Noem, Secretary of the Department of Homeland Security ("DHS"), Ur M. Jaddou, Director of the United States Citizenship and Immigration Services ("USCIS"), and Marco Rubio, Secretary of the Department of State ("USDOS"), contending: (1) that the USDOS arbitrarily and capriciously terminated Plaintiffs' immigrant visa; or (2), that, even if USDOS correctly terminated Plaintiffs' immigrant visa, the USCIS action to automatically revoke Plaintiffs' I-130 Relative Petition was arbitrary and capricious.

**PARTIES**

2. Alberic P., who is now a U.S. citizen, petitioned for his son, Paul P., in 1994 when Alberic P. was a lawful permanent resident, which has since been revoked and destroyed by the Defendants.

3. Paul P. is a native and citizen of Haiti, whose I-130 Relative Petition from his father was revoked and destroyed by the Defendants.

4. Defendant Kristi Noem is the Secretary of the DHS and she is being sued in her official capacity. Defendant Noem is charged with the administration of the DHS, and accordingly the USCIS, which is a bureau within the DHS, and the implementation of the Immigration and Nationality Act. Defendant Noem has ultimate responsibility for all immigration-related applications for I-130 Relative Petitions including that of Plaintiffs.

5. Defendant Ur M. Jaddou is the Director of the USCIS, a bureau within the DHS. Defendant Jaddou is sued in her official capacity. Defendant Jaddou is charged with the direction of the USCIS and implementation of the Immigration and Nationality Act. Defendant Jaddou has responsibility for all immigration-related applications for I-130 Relative Petitions that of Plaintiffs.

6. Defendant Marco Rubio is the Secretary of the USDOS, and is sued in his official capacity. Defendant Rubio is charged with the administration of the USDOS. Defendant Rubio has ultimate responsibility for the administration, processing, and adjudication of all immigrant visas including Plaintiffs' immigrant visa.

**JURISDICTION AND VENUE**

7. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346(b) (federal defendant), 5 U.S.C. § 704 (Administrative Procedure Act), and 28 U.S.C. § 1361 (mandamus) because Plaintiffs' civil action seeks to compel officers and employees

of the federal government to perform a duty owed to Plaintiffs. This Court may grant relief in this action pursuant to the said statutes and pursuant to 28 U.S.C. § 1651 (All Writs Act).

8. Pursuant to 28 U.S.C. § 1391(e), venue is proper in this Court because Plaintiff Alberic P. resides in Spring Valley, N.Y. and because a substantial part of the events and omissions giving rise to this action occurred in Spring Valley and other parts of New York State.

## FACTS

9. Alberic P. was born in Haiti in 1943, and later came to the United States in 1985 and subsequently received his lawful permanent residency from the legacy Immigration and Naturalization Service ("INS") on December 1, 1990. Alberic P. became a naturalized U.S. citizen on April 13, 2007.

10. On or about September 26, 1994, Alberic P. petitioned for his son, Paul P. by filing an I-130 Relative Petition with the INS, receipt no. EAC-94-260-53295. Paul P. was born in 1980, so in 1994, he was 14 years old.

11. At that time, Alberic P. and Paul P. resided together at 501 Viola Road, Apt # 7C, Spring Valley, N.Y. 10977; they had been living at that address for several years.

12. On November 1, 1996, Alberic P.'s I-130 Relative Petition, filed on behalf of his son, was approved by the INS.

13. On information and belief, the I-130 Relative Petition was forwarded to the National Visa Center ("NVC") for further visa processing.

14. The NVC is part of the USDOS' Bureau of Consular Affairs. The NVC serves a clerical function in processing immigrant visa applications. The NVC's job is to prepare immigrant visa applications for consular officers to review and adjudicate.

15. In November of 1996, Paul P.'s visa was not yet available. Visa availability is

determined from the USDOS Visa Bulletin, which is published monthly. Paul P.'s visa was approved in the F2A family based category for minor children of lawful permanent residents. According to the November 1996 USDOS Visa Bulletin, in the F2A category, visas were available for persons whose priority dates were before June 22, 1993. Paul P.'s priority date was September 26, 1994.

16. But, once the I-130 Relative Petition was received by the NVC, the NVC should have sent Paul P. a letter confirming receipt of the petition at the NVC and notifying him of the priority date. This letter was previously known as Packet 3(a), or Packet 3A. But, the Plaintiffs never received any correspondence from the NVC at any time.

17. The USDOS Visa Bulletin for February 2000 indicates that visas in the F2A category were available for visas with a priority date before October 15, 1995, which meant that Paul P.'s visa would have been available and once again the NVC should have notified the Plaintiffs of this event. This letter was previously known as Packet 3. But, Paul P. never received any correspondence from the NVC at any time. Likewise, Alberic P. never received any correspondence from the NVC at any time either.

18. On October 20, 2002, Paul P. was detained by the INS and he was placed in removal proceedings.

19. On March 1, 2003, INS and the Customs Service were transferred to the DHS and reorganized to become the USCIS, the Immigration and Customs and Enforcement, and the Bureau of Customs and Border Protection.

20. On information and belief, the NVC terminated Paul P.'s visa on or about May 28, 2004.

21. On June 1, 2004, Paul P. was ordered removed, but the DHS was unable to

effectuate his removal and on August 1, 2006, he was released from DHS custody on an Order of Supervision.

22. On or about May 31, 2005, because no request to reinstate the immigrant visa was received, the NVC permanently destroyed Paul P.'s immigrant visa, whereupon the USCIS automatically destroyed Alberic P.'s I-130 Relative Petition.

23. But, Plaintiffs were not aware of the immigrant visa termination by the NVC because they never received any notices from the NVC.

24. On October 26, 2006, Alberic P. applied for naturalization with USCIS, indicating that he still resided at 501 Viola Road, Apt # 7C, Spring Valley, N.Y. 10977.

25. On April 13, 2007, Alberic P. became a U.S. citizen, the oath ceremony notice was mailed to 501 Viola Road, Apt # 7C, Spring Valley, N.Y. 10977.

26. Believing that the USCIS and the NVC acted arbitrarily and capriciously and in violation of due process, Plaintiffs now seek federal court review of the actions of the USCIS and the NVC.

## LEGAL FRAMEWORK FOR RELIEF SOUGHT

*Visa Processing And Termination At the National Visa Center*

27. U.S. citizens and lawful permanent residents can petition for their family members to get legal status in the United States.

28. The I-130 Relative Petition is the first step in that process.

29. An approved I-130 family-based Relative Petition can be used in two possible ways: it can be used to obtain permanent residency here in the United States for certain eligible beneficiaries or it can be used to obtain an immigrant visa at an U.S. embassy abroad which grants the applicant permission to come or return to the United States with permanent residency.

30. Upon approval by the USCIS, the USCIS notifies the NVC of the approved I-130 Relative Petition. By regulation the NVC is supposed to send the I-130 Relative Petition beneficiary notice of this event.

31. Under the USDOS regulations in place in 2000, codified at 9 Family Affairs Manual (FAM) § 42.63, when the NVC received an approved I-130 Relative Petition from the USCIS, and the immigrant visa was not yet available due to yearly quotas, the NVC was supposed to send the I-130 Relative Petition beneficiary the Packet 3(a) informational packet and then to "send Packet 3 to an alien formerly sent Packet 3(a) when the [a]pplicant's priority date reache[d] the qualifying date established by the [State] Department." *See e.g., Singh v. Clinton*, 618 F.3d 1085, 1089–90 (9th Cir. 2010).

32. On information and belief, in 2010, the NVC and the USDOS clarified its notice procedures in the FAM in response to the holding in *Singh v. Clinton* which emphasized that all notices *must* be sent to the I-130 Relative Petition beneficiary.

33. Under current USDOS regulations, when the NVC receives an approved I-130 Relative Petition from the USCIS, the NVC is supposed to send the Instruction Package to the beneficiary. *See* 9 FAM 504.4-2(B)(g) (providing that "[w]hen an alien's priority date is earlier than the Dates for Filing Applications established by the Department and published in the monthly Visa Bulletin . . . the automated system will generate a cover letter to be mailed to the applicant or his or her agent with the appropriate information sheets and forms for further processing").

34. Once the immigrant visa is available, the NVC is supposed to send the beneficiary or an agent designated by the beneficiary the Notice of Registration as an Intending Immigrant letter. *See* 9 FAM § 504.4-2(A)(1)(c) (providing that "[u]pon receipt of an approved petition granting a beneficiary immediate relative or preference status, the National Visa Center (NVC)

must send the beneficiary the NVC Welcome Letter (formerly Packet 3) or "Notice of Registration as an Intending Immigrant" letter for physical petitions (formerly Packet 3A) notifying the beneficiary of receipt of the petition and advising the beneficiary what steps, if any, to take in applying for a visa").

35.　　In this matter, in 1996, once the NVC received the I-130 Relative Petition from the USCIS, the NVC should have sent a Packet 3(a) information letter to Paul P. at his address at 501 Viola Road, Apt # 7C, Spring Valley, N.Y. 10977, but Paul P. never received any correspondence from the NVC at any time. Likewise, in 2000, when the immigrant visa became available, the NVC should have sent a Notice of Registration as an Intending Immigrant letter or a Packet 3 to Paul P. at 501 Viola Road address, but he never received any correspondence from the NVC at any time.

36.　　If the visa beneficiary does not apply for an immigrant visa within one year of receiving the notice of the visa availability, the NVC terminates the visa application. *See* 9 FAM 504.1-4(B); *see also* 8 U.S.C. § 1153(g) (providing that "[t]he Secretary of State shall terminate the registration of any alien who fails to apply for an immigrant visa within one year following notification to the alien of the availability of such visa"). After termination of the immigrant visa, the visa beneficiary has one additional year to request reinstatement of the visa. *See* 9 FAM 504.13-3(A). Pursuant to 8 U.S.C. § 1153(g) (commonly referred to as "203(g)," relating to section 203(g) of the Immigration and Naturalization Act), if the visa applicant does not apply for reinstatement within one year of the termination date of the visa, the termination becomes final. *See* 9 FAM 504.13-4(A).

37.　　In this matter, on information and belief, Paul P.'s immigrant visa was terminated on or about May 28, 2004, but he contends that he did not receive any notice from the NVC, and

therefore the NVC had no authority to permanently terminate his immigrant visa on or about May 31, 2005.

***The USCIS' Automatic Revocation Of An I-130 Relative Petition***

38. The USCIS has no authority to "automatically" revoke an I-130 Relative Petition after the NVC terminates an immigrant visa.

39. In 1976, 8 U.S.C. § 1153(e) provided that following:

> For the purposes of carrying out his responsibilities in the orderly administration of this section, the Secretary of State is authorized to make reasonable estimates of the anticipated numbers of visas to be issued during any quarter of any fiscal year within each of the categories of subsection (a) of this section and to rely upon such estimates in authorizing the issuance of such visas. The Secretary of State shall terminate the registration of any alien who fails to apply for an immigrant visa within one year following notification to him of the availability of such visa, but the Secretary shall reinstate the registration of any such alien who establishes within two years following notification of the availability of such visa that such failure to apply was due to circumstances beyond his control. *Upon such termination the approval of any petition approved pursuant to section 1154(b) of this title shall be automatically revoked.*

8 U.S.C. § 1153(e) (1976) (emphasis added). Notably, the 1976 version of the statute included, for the first time, automatic revocation of the I-130 Relative Petition upon final termination of the visa at the NVC.

40. Because the regulations had not yet caught up to the statute, the 1976 version of the Code of Federal Regulations did not include any such language regarding automatic revocation based on visa termination by the USDOS, as noted by the following:

> 205.1 Automatic revocation. The approval of a petition made under section 204 of the Act and in accordance with Part 204 of this chapter is revoked as of the date of approval if any of the following circumstances occur before the beneficiary's journey to the United States commences or, if the beneficiary is an applicant for adjustment of status to that of a permanent resident, before the decision on his application becomes final . . .

8 C.F.R. § 205.1 (1976).

8

41. But, by 1988, the legacy INS had promulgated regulations regarding automatic revocation of the I-130 Relative Petition to adhere to the statutory language as follows:

> 205.1 Automatic revocation. The approval of a petition made under section 204 of the Act and in accordance with Part 204 of this chapter is revoked as of the date of approval *if the Secretary of State shall terminate the registration of any beneficiary pursuant to the provisions of section 203(e) of the Act* or if any of the following circumstances occur before the beneficiary's journey to the United States commences or, if the beneficiary is an applicant for adjustment of status to that of a permanent resident, before the decision on his application becomes final . . .

8 C.F.R. § 205.1 (1976) (emphasis added).

42. But, starting on October 1, 1991, as enacted in Public Law 101-649 (1990), Congress eliminated the automatic revocation language in the statute, most likely as a result of due process concerns, as follows (in addition, subsection "e" was re-designated as section "g"):

> For purposes of carrying out the Secretary's responsibilities in the orderly administration of this section, the Secretary of State may make reasonable estimates of the anticipated numbers of visas to be issued during any quarter of any fiscal year within each of the categories under subsections (a), (b), and (c) of this section and to rely upon such estimates in authorizing the issuance of visas. The Secretary of State shall terminate the registration of any alien who fails to apply for an immigrant visa within one year following notification to the alien of the availability of such visa, but the Secretary shall reinstate the registration of any such alien who establishes within 2 years following the date of notification of the availability of such visa that such failure to apply was due to circumstances beyond the alien's control.

8 U.S.C. § 1153(g) (1993). Noticeably absent is the "automatic" revocation of the I-130 Relative Petition language upon visa termination by the USDOS. The current version of 8 U.S.C. § 1153(g) is unchanged since 1993.

43. Although Congress eliminated the "automatic" revocation of the I-130 Relative Petition language upon visa termination by the USDOS in the statute, neither the legacy INS nor the USCIS ever updated its regulations to reflect this change in the statute:

> The approval of a petition made under section 204 of the Act and in accordance with part 204 of this chapter is revoked as of the date of approval if the Secretary

9

> of State shall terminate the registration of any beneficiary pursuant to the provisions of section 203(e) of the Act before October 1, 1991, or section 203(g) of the Act on or after October 1, 1991 . . .

8 C.F.R. § 205.1 (1993). Even today, similar to the regulations in 1993, the immigration regulations provide the following:

> Reasons for automatic revocation. The approval of a petition or self-petition made under section 204 of the Act and in accordance with part 204 of this chapter is revoked as of the date of approval: (1) If the Secretary of State shall terminate the registration of the beneficiary pursuant to the provisions of section 203(e) of the Act before October 1, 1991, or section 203(g) of the Act on or after October 1, 1994 . . .

8 C.F.R. § 205.1 (2023).

44. Accordingly, it is readily apparent that the statutory authority for 8.C.F.R. § 205.1 regarding automatic revocation of an I-130 Relative Petition based on visa termination by the NVC no longer exists.

45. Thus, the USCIS' automatic revocation regulation at 8 C.F.R. § 205.1 is unreasonable as either arbitrarily and capriciously or flatly inconsistent with the clear language of the statute as expressed by Congress. In addition, the decision to approve an I-130 Relative Petition is not a matter of discretion, and thus an automatic revocation of the I-130 Relative Petition would violate due process where the bases of the I-130 Relative Petition approval have remained unchanged since approval.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION:

### THE USDOS VIOLATED THE APA AND DUE PROCESS REGARDING THE TERMINATION OF PAUL PIERRILUS' IMMIGRANT VISA

46. Plaintiffs re-allege and incorporate by reference all allegations set forth in paragraphs 1-45 above as if fully set forth here.

47. "Under the APA, a reviewing court must 'hold unlawful and set aside agency action' for certain specified reasons, including whenever such action is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law'; 'contrary to constitutional right'; or 'in excess of statutory jurisdiction, authority, or limitations.' 5 U.S.C § 706(2)(A), (B), (C)." *Make the Rd. New York v. Pompeo*, 475 F. Supp. 3d 232, 259 (S.D.N.Y. 2020).

48. In addition, according to the tenets of *Singh v. Clinton*, 618 F.3d at 1089–90, the NVC and the USDOS must send notice "to the alien," or in this case Paul P., based on the plain language of the 8 U.S.C. § 1153(g) statute.

49. Moreover, the due process clause of the Fifth Amendment requires "notice and an opportunity to be heard" prior to a deprivation of property. *See, e.g., Dusenbery v. U.S.*, 534 U.S. 161, 167 (2002).

50. Here, Plaintiffs seek mandamus relief to compel the USDOS and the NVC to reinstate Paul P.'s immigrant visa and accordingly Alberic P.'s I-130 Relative Petition based on the fact that neither Paul P. nor Alberic P. received any notice from the NVC or USDOS prior to the time when the NVC terminated Paul P.'s immigrant visa in violation of its own notice regulations in the FAM and/or in violation of the statutory notice requirements in 8 U.S.C § 1153(g) and/or in violation of the notice requirements of the due process clause of the Fifth Amendment.

51. Neither Alberic P. nor Paul P. received any notices from the NVC pertaining to the I-130 Relative Petition or Paul P.'s immigrant visa. In any event, it would be considered legally insufficient notice if the NVC had only sent notices to the petitioner Alberic P. and not to the beneficiary Paul P. based on the tenets of *Singh v. Clinton*, 618 F.3d at 1089–90, which held that the government must send notice "to the alien" based on the plain language of the 203(g) statute.

In the event that the NVC sent any notices at all in this matter from 1996 to 2005, and did not send notice to Paul P., than the NVC violated the tenets of *Singh v. Clinton*, which demand that notice be provided to the alien, or this case, Paul P. Thus, the NVC should have sent all visa notices to Paul P. at his address at 501 Viola Road, Apt # 7C, Spring Valley, N.Y. 10977, but neither Paul P. nor his father Alberic P. received any notices from the NVC. If the NVC did not send notices to Paul P., the NVC violated the tenets of *Singh v. Clinton*, and APA.

52. The Plaintiffs do not know why they did not receive any notices from the NVC when they should have.

53. Plaintiffs have exhausted their administrative remedies as there is no appeal of the NVC's termination decision or any other manner to have the NVC reopen or reconsider its decision. There are no other regulatory administrative remedies available to Plaintiffs to redress the grievances described herein.

54. Thus, this Court should find that the NVC failed to properly notify Paul P. regarding his immigrant visa from 1996 to 2005, and thus compel the NVC to reinstate his immigrant visa and consequently compel the USCIS to reinstate Alberic P.'s I-130 Relative Petition.

**SECOND CAUSE OF ACTION:**

**THE USCIS VIOLATED THE APA AND DUE PROCESS BY AUTOMATICALLY REVOKING ALBERIC PIERRILUS' I-130 RELATIVE PETITION**

55. Plaintiffs re-allege and incorporate by reference all allegations set forth in paragraphs 1-54 above as if fully set forth here.

56. "Under the APA, a reviewing court must 'hold unlawful and set aside agency action' for certain specified reasons, including whenever such action is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law'; 'contrary to constitutional right'; or 'in excess of statutory jurisdiction, authority, or limitations.' 5 U.S.C § 706(2)(A), (B), (C)." *Make

12

*the Rd. New York*, 475 F. Supp. 3d at 259.

57. In addition, the due process clause of the Fifth Amendment requires "notice and an opportunity to be heard" prior to a deprivation of property. *See, e.g., Dusenbery v. U.S.*, 534 U.S. at 167.

58. As asserted above, the USCIS' automatic revocation regulation at 8 C.F.R. § 205.1 is unreasonable as either arbitrary and capricious or flatly inconsistent with the clear language of the statute as it existed in 2005 and as it exists now. In addition, the decision to approve an I-130 Relative Petition is not a matter of discretion, and thus an automatic revocation of an I-130 Relative Petition would violate due process where the bases of the I-130 Relative Petition approval have remained unchanged since approval.

59. Here, Alberic P., the petitioner for the I-130 Relative Petition, is a living United States citizen and the biological father of Paul P. Thus, without statutory support for the USCIS regulations at 8 C.F.R. § 205.1, there appears to be no basis for the USCIS' revocation of Alberic P.'s I-130 Relative Petition.

60. Plaintiffs have exhausted their administrative remedies as there is no appeal of the USCIS automatic revocation of Alberic P.'s I-130 Relative Petition or any other manner to have the USCIS reopen or reconsider its decision. There are no other regulatory administrative remedies available to Plaintiffs to redress the grievances described herein.

61. Thus, this Court should find that the USCIS violated the APA and/or due process and compel the USCIS to reinstate Alberic P.'s I-130 Relative Petition.

**IRREPARABLE INJURY**

62. Plaintiffs re-allege and incorporate by reference all allegations set forth in paragraphs 1-61 above as if fully set forth here.

63. Plaintiffs have suffered and will continue to suffer irreparable harm because of the USCIS' decision to permanently terminate Paul P.'s immigrant visa and revoke Alberic P.'s I-130 Relative Petition.

64. Plaintiffs have been subjected to stress, anxiety, and uncertainty engendered by the inability to resolve their legal status and to make long-term decisions and commitments with respect to their living arrangement, travel, education and careers and their lives in general.

## **PRAYER FOR RELIEF**

Plaintiffs respectfully request that this Court grant the following relief:

(1) Assume jurisdiction over this matter;

(2) Issue a writ in the nature of mandamus, pursuant to 28 U.S.C. § 1361 and 5 U.S.C. § 706(1), compelling:

   a. the USDOS and the NVC to reinstate Paul P.'s immigrant visa;

   b. the USCIS to reinstate Alberic P.'s I-130 Relative Petition and accordingly to re-submit the I-130 Relative Petition to the NVC;

(3) Award Plaintiffs all costs and attorney's fees, and

(4) Grant any other and further relief which this Court deems necessary and proper.

DATED: March 17, 2025

*Respectfully submitted,*

*/s/ Sarah E. Decker*
Sarah E. Decker (Bar No. 5850763)
ROBERT F. KENNEDY HUMAN RIGHTS
88 Pine Street, 8th Floor, Suite 801
New York, New York 10005
Tel.: (646) 289-5593
E: decker@rfkhumanrights.org

Sarah T. Gillman (Bar No #SG 9273)
ROBERT F. KENNEDY HUMAN RIGHTS
88 Pine Street, 8th Floor, Suite 801
New York, New York 10005
Tel.: (646) 289-5593
E: gillman@rfkhumanrights.org